DEBT.

# Bank of Kentucky (old,) *vs* Blanton and Dudley.

*Case 14.*

## ERROR TO THE FRANKLIN CIRCUIT.

### *Limitation. Sureties. Obligations.*

*December 13*

JUDGE BRECK delivered the opinion of the Court.

Case stated.

THIS was an action of debt brought by the plaintiff in error against the defendants, upon a note bearing date in 1833, for $2,500, payable one hundred and twenty days after date. The note upon its face, purports to be given by Blanton as principal and Dudley as surety.

Dudley pleaded that he was surety only, and relied upon the statute of 1838, limiting actions against sureties, in bar of the plaintiff's action. A demurrer to this plea having been overruled and judgment thereupon rendered for defendant, Dudley, the plaintiff has brought the case to this Court.

The third section of the act relied on, (3 *Stat. Law,* 558,) provides, "that from and after the first day of July, 1838, sureties, their executors, administrators, heirs and devisees, shall be discharged from liability on all written obligations, other than those provided for in the first and second sections of this act, where seven

years shall have elapsed without suit, after the cause of action accrued on such written obligation."

BANK OF KY.
vs
BLANTON AND
DUDLEY.

Whether the expression, *written obligations*, as used in this section, embraces the writing sued on, is the only question presented for our determination.

The first and second sections apply to injunction, appeal and other bonds required by law, and it is contended that the third section was intended only to embrace all other bonds and obligations of that particular character.

But the case of *Lewis* vs *Harbin and Downing*, (5 B. Monroe, 564,) a case under this statute, settles the question that it was not intended to be thus restricted. In that case Harbin and Downing, the latter as surety, had executed their note to Lewis, and it was held to be within the statute or the section in question. The note was under seal, which constitutes the only difference between that case and this, but that that fact had any bearing upon the case, does not appear.

The case of *Lewis* vs *Harbin and Downing*, (5 B. Monroe, 564,) cited and approved.

But secondly: It is insisted that by the expression *written obligations*, the Legislature only intended obligations so called according to the technical *legal* meaning of the word, or bonds with a condition and a penalty. In answer to that position, it need only be remarked, that thus limited, the expression would not embrace the note in *Lewis* vs *Harbin, supra*, and that the construction and principles settled in that case, we are not inclined to disturb.

But it is further insisted that the Legislature should be presumed to comprehend the meaning and use of plain, simple, legal terms, and must, therefore, have intended, by the term *obligations*, at all events, only writings under seal. And that the writing in this case, a mere simple promissory note, without a seal, is not a bond or obligation, and not embraced by the provision.

In support of this position or construction, it is urged that the proper and substantial distinction between a note and bond or obligation, has ever been retained and kept alive by the Legislature, and the act of 1828, for the relief of sureties in individual contracts, is referred to as evidence of the fact. It is true that act provides

BANK OF KY.
*vs*
BLANTON AND
DUDLEY.
for the relief of sureties in notes, bonds, bills or obligations, but it is equally true that no distinction is made between the sureties in the different instruments.  The provision extends equally to all, and it is worthy of remark, that the word obligor is used throughout the act, as applying to each class of writings.  It seems to us, therefore, that there is nothing in that act tending in the slightest degree, to sustain the construction contended for.  But instead of keeping up the distinction between sealed and unsealed writings, the Legislature, near forty years ago, so far abolished it as to place all writings without a seal, stipulating for the payment of money or property, or for the performance of any act or acts, duty or duties, upon the same footing with sealed writings containing the like stipulations; and providing also, that they should receive the same consideration in all Courts of Justice, and to all intents and purposes, have the same effect, and upon which the same species of action may be founded as if sealed.

The act of 1838, (3 *Stat. Law,* 558,) places sureties in all writings whether sealed or unsealed, upon the same footing, and sureties in all are released when there is a failure to sue within the time prescribed by the statute.

This act places the note of Blanton and Dudley upon precisely the same footing as the note of Harbin and Downing, and utterly forbids the idea that the Legislature intended to make a distinction between them in the act of 1838.  It would be absurd to suppose that the Legislature intended to discharge sureties upon writings under seal, after seven years had elapsed without suit, and to leave sureties upon writings without seal, liable for twenty; yet such would be the effect.  There might be some plausibility in the construction contended for, if a note without seal had not been raised to the dignity of a sealed instrument; but in that case the action would be in assumpsit and barred in five years.

It is manifest, we think, the Legislature intended to use the word obligation in its general and popular sense, and not according to its strict technical meaning as a legal term.

Any writing by which one individual is bound to pay money to another, whether under seal or not, is an obligation according to the popular use and meaning of the word.  So a writing with a seal or scroll is called a note.

Upon the whole, we are satisfied that the writing sued on is embraced by the expression *written obligations.*

Wherefore, the judgment is affirmed.

*Cates* for plaintiff; *Hewitt and Harlan* for defendants.